FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 APR 16 P 12:09

CLERK'S OFFICE
AT Plaintiffs

BY_____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

COREY ADAMS, et al.      \*
    Plaintiffs      \*
     \*
    v.      \*     CIVIL NOs. L-08-2404; 08-2405
     \*
TIMOTHY MORRIS, et al.      \*
    Defendants      \*
    \*\*\*\*\*\*\*

## MEMORANDUM

This is a sexual harassment case. Between April 2007 and June 2007, the Plaintiffs, Corey Adams and Tyler Bennett, worked for Defendant T.L. Morris Seafood, Inc. ("TLM"), a wholesale seafood company. Adams and Bennett allege that Defendant Timothy Morris, the sole owner and operator of TLM, frequently groped them, shouted sexual obscenities, and, on at least one occasion, offered Bennett money in exchange for sexual favors.

The Plaintiffs initially filed suit in the Circuit Court for Dorchester County. Their Complaint included several common law tort claims as well as a claim under Title VII and its Maryland analogue, the Fair Employment Practices Act (the "Act"), Md. Code Ann., State Gov't §§ 20-101-1203 (West 2010). See Compl., Docket No. 2. The Defendants removed the case to this Court under federal question jurisdiction and, on December 7, 2009, the case proceeded to trial. At the close of the Plaintiffs' case-in-chief, the Court granted the Defendants' motion for judgment as a matter of law with respect to the Title VII claim, finding that TLM was not an "employer" covered by the statute.[1] Nevertheless, the Court exercised supplemental jurisdiction

---

[1] Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

over the remaining state law claims. On December 11, 2009, the jury returned a verdict in favor of the Plaintiffs and awarded damages on all but one of the remaining claims.[2]

Now pending is the Defendants' renewed motion for a judgment as a matter of law or, in the alternative, for a new trial or an amended judgment. Docket Nos. 66, 71. No hearing is necessary to decide this matter. See Local Rule 105.6 (D. Md. 2008). For the reasons stated herein, the Court will, by separate Order of even date, GRANT the motion IN PART and DENY the motion IN PART. The Court will VACATE the judgment and ENTER an AMENDED judgment. The Clerk is DIRECTED to CLOSE the case.

I. Background

The facts are fully set forth in the parties' briefs. The essential facts are as follows.

Defendant Timothy Morris is the sole owner of TLM, a wholesale seafood company located on Maryland's Eastern Shore. TLM's employees offload crabs from crabbers' boats, clean and sort the crabs, steam them, and load them into customers' vehicles for distribution.[3]

Plaintiff Corey Adams began working for TLM in late April 2007. Adams testified that, during his time at TLM, Morris repeatedly grabbed Adams's genitals, pinched Adams's buttocks, and pushed Adams's head to his crotch to simulate oral sex. Adams also testified that Morris frequently yelled sexual obscenities after touching Adams. On at least one occasion, Morris asked Adams whether he masturbated the night before he came to work.

Plaintiff Tyler Bennett began working for TLM in May 2007. Bennett also testified that Morris groped him and shouted sexual obscenities after touching him. In addition, Bennett testified that Morris offered Bennett money to watch him urinate, that Morris offered to buy

---

[2] The jury found no liability for false imprisonment.
[3] It is undisputed that the crabbers are not servants or agents of TLM and, therefore, that they do not qualify as employees for purposes of Title VII or the Fair Employment Practices Act.

2

Bennett a new truck if he would have sex with Morris, and that Morris showed Bennett part of a pornographic movie depicting homosexual sex.

Matt Pender, who had worked at TLM with Adams and Bennett, corroborated much of their testimony. Pender testified that, on several occasions, he observed Morris patting and grabbing the Plaintiffs' genitals and yelling obscenities. Pender, however, did not corroborate Bennett's testimony that Morris offered him money in exchange for sexual favors.

Although the evidence demonstrated that the harassment was constant throughout their employment at TLM, the Plaintiffs did not leave the company until June 2007. On August 11, 2008, they filed suit in the Circuit Court of Dorchester County. Their Complaint included five common law counts, as follows: assault (Count One), battery (Count Two), false imprisonment (Count Three), intentional infliction of emotional distress (Count Four), and respondeat superior liability for TLM (Count Five). The Complaint also included a claim "in accordance with the protections afforded by the XIV amendment of the Constitution of the United States, Title VII, the Civil Rights Act of 1964, and state adaptations of equal protection statues [sic] for the workplace" (Count Six). Compl. ¶ 71.

At the close of the Plaintffs' case-in-chief, the Defendants' moved for judgment as a matter of law on the Title VII and intentional infliction of emotional distress claims. The Court dismissed the Title VII claim, finding that the Plaintiffs had not established that TLM was an "employer" as defined by the statute. The Court also dismissed the intentional infliction claim, finding that the Plaintiffs had not established that the Defendants' conduct rose to the requisite degree of outrageousness. The Defendants, however, did not move to dismiss the claim under the Fair Employment Practices Act.

At the close of the evidence, the Defendants renewed their motion and moved to dismiss the state employment discrimination claim. First, they argued that the Complaint failed to state a claim upon which relief could be grounded. The Court rejected this claim, reasoning that the Complaint put the Defendants on sufficient notice that the Plaintiffs sought recovery under the Act.[4]

Second, the Defendants argued, for the first time in the case, that the Act does not provide a private cause of action. Relying on a Maryland Court of Appeals decision, Molesworth v. Brandon, 341 Md. 621 (1996), the Plaintiffs contended that the Act prohibits any form of employment discrimination, and therefore, that it must provide a private cause of action for sexual harassment.[5] The Defendants disputed this point but did not cite any pertinent authority.

Given this posture and the need to conclude the trial, the Court chose to send the sexual harassment claim to the jury. Nevertheless, skeptical of the claim's durability, the Court employed a special verdict sheet that directed the jury to determine liability and award damages on a claim-by-claim basis. Through this device, any damages based on the Act could be excised if subsequent briefing showed that no recovery under the Act was available. Ultimately, the jury found liability on each count of the Complaint, except for false imprisonment, and awarded damages to each plaintiff as follows:

---

[4] Compare Fed. R. Civ. P. 8(a) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Conley v. Gibson, 355 U.S. 41, 47 (1957) (the complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests") with Compl. ¶ 71 (demanding judgment "in accordance with the protections afforded by the XIV Amendment of the Constitution of the United States, Title VII, the Civil Rights Act of 1964, and state adaptations of equal protection statues [sic] for the workplace) (emphasis added).

[5] In Molesworth, the Court of Appeals held that an at will employee could maintain a wrongful discharge claim based on the Act's declaration of public policy. See Molesworth, 341 Md. at 632.

- Assault: $5,000 (compensatory) and $25,000 (punitive);

- Battery: $10,000 (compensatory) and $50,000 (punitive); and

- Sexual Harassment: $30,000 (compensatory) and $100,000 (punitive).

See Docket No. 64.

## II. Discussion

The Defendants have moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or, in the alternative, for a new trial or an amended judgment under Rule 59. The Court will begin by addressing the Defendants' request that the Court reconsider its ruling that the Fair Employment Practices Act provides for a private cause of action.

### A. The Maryland Fair Employment Practices Act

The Defendants seek to amend the judgment to exclude the Plaintiffs' sexual harassment claim under the Act.[6] The Fourth Circuit has consistently recognized three bases for amending a judgment under Federal Rule of Civil Procedure 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir.1998); see also EEOC v. Lockheed Martin Corp., Aero & Naval Sys., 116 F.3d 110, 112 (4th Cir. 1997) (same); Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993) (same). The Court is mindful that granting a motion to amend a judgment "is an extraordinary remedy which should only be used sparingly." Pac. Ins. Co., 148 F.3d at 403.

Based upon the post-trial briefing, the Court is satisfied that a clear error of law was committed. The Fair Employment Practices Act does not provide for a private cause of action

---

[6] A motion for reconsideration filed within ten days of judgment is properly construed as a motion to alter or amend judgment. See Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350 (5th Cir. 1993).

5

for alleged discriminatory actions that occurred prior to October 1, 2007. See <u>Vaeth v. Bd. of Tr., Fire & Police Employees Ret. Sys. Of Baltimore City</u>, 2009 WL 2487076, *4 (D. Md. Aug. 11, 2009) (unpublished) (discussing the Act's legislative history); <u>Butler v. Giant Food, Inc.</u>, 2008 WL 5501182, *2 (D. Md. May 23, 2008) (unpublished). Further, like Title VII, the Act does not apply to employers with fewer than fifteen employees. § 20-601(d)(1)(i) (defining employer as "a person that: 1. is engaged in an industry or business; and 2. has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year"); <u>see also</u> <u>Molesworth</u>, 341 Md. At 632 (noting that the public policy against employment discrimination set forth in Article 49B applies only to employers of more than 15 employees).

In the instant case, the Plaintiffs allege that the discriminatory actions occurred between April 2007 and June 2007. Further, it is undisputed that TLM did not have more than fifteen employees. Therefore, the Plaintiffs' employment discrimination claim under the Act fails.[7]

The correct remedy is to enter an amended judgment that does not include the Plaintiffs' sexual harassment claim. Accordingly, the Court will also grant the Defendants' motion for remittitur in part. See <u>Call Carl, Inc. v. BP Oil Corp.</u>, 403 F. Supp. 568, 578 (D. Md. 1975), <u>aff'd in relevant part</u>, 554 F.2d 623 (4th Cir. 1977), <u>cert denied</u>, 434 U.S. 923 (1977) ("[A] remittitur may be assessed in an amount that will bring the verdict on damages to the maximum amount which the jury could have awarded under the evidence introduced at trial."); 11 Wright,

---

[7] The Court need not determine whether the evidence at trial established a viable claim under <u>Molesworth</u> because the Plaintiffs did not plead a wrongful termination claim. See Compl. ¶ 71 (demanding judgment "in accordance with the protections afforded by the XIV Amendment of the Constitution of the United States, Title VII, the Civil Rights Act of 1964, and state adaptations of <u>equal protection statues</u> [sic] for the workplace) (emphasis added). Further, in their opposition to the instant motion, the Plaintiffs contend that "the efficacy of their cause of action does not, nor should it under any rationale turn on whether a termination occurred." Opp. 13.

Miller & Kane, Federal Practice & Procedure Civil 2d § 2815 (noting that a court may reduce the amount of damages "in those cases in which it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there").

**B.      Motion for Judgment as a Matter of Law**

The Defendants also move for judgment as a matter of law and for judgment notwithstanding the verdict. Under Rule 50(b), "a district court may grant JNOV 'if there is no legally sufficient evidentiary basis for a reasonable jury to find for the [non-moving party].'" Cline v. Wal-Mart Stores, 144 F.3d 294, 301 (4th Cir. 1998) (citation omitted). The Defendants argue that there was not sufficient evidence to sustain the jury's finding that TLM is vicariously liable for Morris's intentional torts.

Under Maryland law, an employer is liable for the acts of its agents if "the offending conduct occurred within the scope of the employment of the servant or under the express or implied authorization of the master." Cox v. Prince George's County, 296 Md. 162, 165 (1983). At trial, the evidence established that Morris, the harasser, was the sole owner of TLM and that he exercised control over all of its affairs. Given these facts, there is no reason to disturb the jury's finding of vicarious liability.

**C.      Motion for New Trial**

**1.      Excessive Verdict**

The Defendants contend that they are entitled to a new trial because the verdict was excessive. The Maryland and federal standards for reviewing the alleged excessiveness of a jury's damage award differ. See Snyder v. Phelps, 533 F. Supp. 2d 567, 585 (D. Md. 2008), rev'd on other grounds, 580 F.3d 206 (4th Cir. 2009), cert. granted --- S. Ct. ----, 2010 WL 757695 (U.S. Mar 08, 2010) (comparing Maryland and federal standards). Therefore, under the

doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the Court must apply the Maryland standard.[8] See Gasperini v. Center of Humanities, Inc., 518 U.S. 415, 430 (1996) (holding that the Erie doctrine "precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court"); Felder v. Casey, 487 U.S. 131, 151 (1988) (holding that the Erie doctrine applies to state law claims that are brought to federal courts through supplemental jurisdiction).

The Defendants argue that the evidence does not warrant the compensatory damages awarded by the jury for the assault and battery claims. Under Maryland law, a compensatory damage award should be reduced if "the verdict is 'grossly excessive,' or 'shocks the conscience of the court,' or is 'inordinate' or 'outrageously excessive,' or even simply 'excessive.'" Banegura v. Taylor, 312 Md. 609, 623 (1988) (citing Dagnello v. Long Island Railroad Co., 289 F.2d 797, 802 (2d Cir. 1961); Conklin v. Schillinger, 255 Md. 50 (1969)). The trial court "should extend the fullest consideration possible to the amount returned by the jury" before it concludes that the verdict is excessive. Conklin, 255 Md. at 69.

Based on the evidence presented in this case, the Court finds that the jury's compensatory award does not "shock the conscience." The Plaintiffs presented ample evidence of the mental pain and suffering, fright, nervousness, and humiliation that Morris's conduct caused them. This evidence included testimony by the Plaintiffs and their mothers. Given these facts, there is no reason to disturb the $15,000 in compensatory damages awarded by the jury to each plaintiff.

---

[8] Under the federal standard, a damages verdict must be set aside if "the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice." Johnson v. Parrish, 827 F.2d 988, 991 (4th Cir. 1987) (quoting Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir. 1941)).

8

The Defendants also challenge the jury's punitive damage award of $75,000 to each plaintiff. Maryland courts apply nine legal principles to determine whether a punitive damages award is excessive. See Bowden v. Caldor, Inc., 350 Md. 4 (1998). The Defendants rely on two of these principles.

First, the Defendants argue that the damages are greater than necessary to deter future conduct. See id. at 29 ("[O]ne of the purposes of punitive damages is to deter the defendant from engaging in the type of conduct forming the basis for the award."). This argument is unpersuasive. At trial, the evidence established that Morris frequently assaulted and battered the Plaintiffs, who, at the time of the incidents, were teenagers. Further, the evidence established that the Plaintiffs repeatedly asked Morris to stop touching them. Given these facts, the jury's punitive damage award is not greater than necessary to deter Morris and others similarly inclined.

Second, the Defendants contend that the damages are disproportionate to the Defendants' ability to pay. See id. at 28 ("[T]he amount of punitive damages 'should not be disproportionate to . . . the defendant's ability to pay.'") (quoting Ellerin v. Fairfax Savings, 337 Md. 216, 242 (1995)). Morris's 2008 tax returns, which the Defendants introduced into evidence for the jury to consider, established that his business income was approximately $20,600. The Defendants, however, offered no evidence as to the value of the business, Morris's other assets, or his ability to borrow. The Defendants' showing is inadequate, and the Court finds that the jury's punitive damage award should not be disturbed.

2.  **Juror Misconduct**

The Defendants also contend that they are entitled to a new trial because of juror misconduct. The facts supporting this claim are as follows.

During the trial, the Defendants' moved to dismiss Juror Number One. They claimed that they had observed her making eye contact with Mr. Jablon, Corey Adams's attorney. The Court denied the request because no one else had noticed the alleged conduct. For the remainder of the trial, the Court kept a close watch on Juror Number One and did not observe anything unusual in her behavior.

As the trial proceeded, Juror Number One, who was enrolled in evening courses, requested that she be excused so that she would not be late for an exam. The Court consulted with the parties to determine whether they objected to her request. Although the parties consented to her removal, Juror Number One withdrew her request. Under these circumstances, there is no reason to conclude that Juror Number One acted improperly. Therefore, the Defendants are not entitled to a new trial.

### III. Conclusion

For reasons stated herein, the Court will, by separate Order of even date, GRANT the Defendants' motion IN PART, DENY the Defendants' motion IN PART, and ENTER an AMENDED JUDGMENT that excludes the sexual harassment claim. The Clerk is DIRECTED to CLOSE the case.

/s/ KTH

Dated this ___ day of April, 2010.

Benson Everett Legg
United States District Judge